WHITEFOORD S. MAYS, JR., Respondent, *v.* NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY, Appellant.

Supreme Court, Appellate Term, First Department, April 13, 1950.

*Kenneth B. Morton* and *Edward R. Brumley* for appellant.

*Thomas O. Morgan* for respondent.

EDER, J. Plaintiff was a passenger on defendant's commuters' train en route from the Grand Central station to his home in Greens Farms, Connecticut. He had a large pigskin wardrobe trunk in the parcel room at the station and engaged a redcap to take it from there and carry it into one of the cars of the train. He accompanied the redcap into the car. The trunk was too large to be placed in the overhead rack and plaintiff had the redcap place the trunk in the aisle alongside a seat the plaintiff was about to occupy.

The trunk impeded free use of the aisle as a passageway and a trainman or conductor who came along advised plaintiff that the trunk was in the way and would jeopardize the clear passage in the train and told him to remove it and put it at the end of the car. Thereupon plaintiff and the redcap went to the rear of the car and pursuant to plaintiff's direction the redcap placed the trunk on the car platform. Plaintiff then gave the redcap

a gratuity and the latter then left and went on his way. Upon arrival of the train at Greens Farms the trunk was missing.

Plaintiff sued to recover for the loss of the trunk and its contents on the theory that defendant was a bailee and was liable for the loss sustained and was awarded a recovery on that theory.

The train had a baggage car attached in which plaintiff could have deposited his luggage, but he was unaware of this accommodation, erroneously assuming a baggage car was not attached, and he did not avail himself of this facility; instead, he had the redcap carry the trunk into the passenger car, and, as mentioned, it being too large to be placed in the overhead rack he had it placed in the aisle alongside the seat he was about to occupy.

It is entirely clear that plaintiff chose and intended to have the trunk under his own care and supervision throughout his journey, to retain its possession while traveling and that in removing it as an obstruction in the aisle and directing the redcap to place it on the platform of the car that he did not release or intend to release his own control thereof and did not commit it to the care and supervision of the defendant.

The rule of law applicable to such a situation is that where a traveler assumes the charge of his goods *animo custodiendi* and a loss thereof occurs, without negligence of the carrier, the carrier cannot be held liable for the loss (*Mudgett* v. *Bay State Steamboat Co.*, 1 Daly 151, 153; *Gore* v. *Norwich & New York Transp. Co.*, 2 Daly 254, 255, 256; *Tower* v. *Utica & Schenectady R. R. Co.*, 7 Hill 47, 48; *Tyson* v. *Bauland Co.*, 186 N. Y. 397, 402; 5 Elliott on Railroads [3d ed.], § 2517, p. 335, and cases there cited), and it is my view that such is the situation established by the evidence. In other words, no relationship of bailor and bailee existed but that plaintiff exercised his own care and supervision over his property.

The court below held, however, that the conduct of the trainman or conductor in directing that the trunk be removed from the aisle and placed on the platform of the car indicated an assumption of its custody and control and constituted defendant a bailee and that it was liable to the plaintiff for the loss. The defendant contends that upon the particular facts of this case a bailment was not shown to exist.

A bailment is defined as a delivery of personal property for some particular purpose, or a mere deposit, upon a contract express or implied, and that after such purpose has been fulfilled it shall be redelivered to the person who delivered it, or otherwise dealt with according to his directions or kept until

he reclaims it, as the case·may be (6 C. J., Bailments, § 1). It is essential that there be either an actual or constructive delivery by the bailor as well as actual or constructive acceptance by the bailee (*Osborn* v. *Cline,* 263 N. Y. 434, 437).

An actual bailment exists when there is an actual delivery of the property to the bailee or his agents, or a constructive delivery comprehending all those acts which, not truly comprising real possession, have been held by legal construction equivalent to acts of real delivery, which includes symbolical or substituted delivery. A constructive bailment arises when the person having possession holds it under such circumstances that the law imposes an obligation to deliver to another (*Wentworth* v. *Riggs,* 159 App. Div. 899, see dissenting opinion, SEABURY, J., 79 Misc. 403).

Assuming, *arguendo,* that delivery by the plaintiff of his luggage to the redcap and its acceptance by him established a bailment, nevertheless, there is a time when a bailment ceases and it ends when there is a redelivery of the property to the person who delivered it to the bailee or when specific direction is given by the bailor to deposit the property at a particular place and to leave it there, which is the case here.

It is to be observed that plaintiff at all times accompanied the redcap and retained the care and supervision of his property. He accompanied the redcap to the platform of the car and directed him to deposit and leave the trunk there and pursuant to his direction the redcap did so, and being paid by plaintiff for his services, he thereupon departed. With the deposit of the trunk on the platform, at plaintiff's direction, as stated, there was a termination of the bailment and thenceforth the defendant owed plaintiff no further duty with respect to its care and supervision.

The cases of *Hasbrouck* v. *New York Central & Hudson Riv. R. R. Co.* (202 N. Y. 363) and *Reisinger* v. *Pullman Co.* (248 App. Div. 171, 252 App. Div. 87) cited in the dissent herein, are without application and distinguishable in that the factual situations in those cases are not similar to that in the case at bar.

In the *Hasbrouck* case (*supra*), which was limited by the court to its own particular facts, the plaintiff was en route to Worcester, Mass., where she was to leave the train to change for another. She had arranged with the conductor to have a trainman take her suitcase off at Worcester, where she was to take another train for Natick. About ten minutes later a trainman came to her and inquired if she was the lady who had requested the conductor to have someone help her off with her baggage at Worcester. She inquired, " Is this Worcester? ", and informed that it was and believing the train was about to stop

at Worcester, let the trainman take her suitcase, which he carried to the rear of the car. When the train stopped he handed her her suitcase and returned to the car. She boarded the train for Natick and not long afterward opened her suitcase and found that certain jewelry and some money it contained were gone. Upon these particular facts the court held the relationship of bailor and bailee was established and that the defendant was liable for the loss. It is not the factual situation at bar and hence that case is without application here.

In the *Reisinger* case (*supra*) the basic issue upon which the case was decided was that the plaintiff was guilty of contributory negligence. There, the plaintiff delivered to a porter her suitcase containing jewelry exceeding in value $10,000, on the assumption he would take care of her baggage until such time as she claimed it and again took it into her custody. She did not inform the porter of its valuable contents. The trial court held her to be guilty of gross negligence and directed a verdict for the defendant. The Appellate Division reversed and ordered a new trial upon the ground that there were issues of fact which should have been submitted to the jury (248 App. Div. 171, 174).

A second trial ended in disagreement. The third trial resulted in a verdict for defendant, which was affirmed, and in doing so the Appellate Division stated that the jury may well have regarded her failure to apprise the porter that her suitcase contained jewelry in excess of $10,000, as constituting contributory negligence, sufficient to preclude a recovery (252 App. Div. 87, 88). It is not the factual situation in the instant case and the *Reisinger* case (*supra*) is without application.

The instant appeal is being decided upon the single question whether upon the particular facts of this case the existence of a bailment was shown. For the reasons stated, the ultimate conclusion is reached that the existence of a bailment was not established and that it was error for the court below to award plaintiff a recovery.

The judgment should be reversed, with costs, and the complaint dismissed on the merits, with costs.

HAMMER, J. (dissenting). I dissent and vote for affirmance. In my opinion bailment and contributory negligence were questions of fact (*Hasbrouck* v. *New York Central & Hudson Riv. R. R. Co.*, 202 N. Y. 363; *Reisinger* v. *Pullman Co.*, 248 App. Div. 171, 252 App. Div. 87).

PECORA, J., concurs with EDER, J.; HAMMER, J., dissents in memorandum.

Judgment reversed, etc.