OPINION OF THE COURT
John A. Milano, J.
■ This is a small claims action in which the following question is presented to the court: "Can a 'park and lock’ garage give *218 rise to the creation of an implied bailment?” For the reasons explained below this court answers said question in the affirmative. Before proceeding to the legal issues involved herein, a brief factual history is in order.
FACTS
As noted, this is a small claims case tried before this court on April 11, 1990. At trial, it was adduced that on December 1, 1989 the plaintiff entered into a month-to-month parking agreement with the defendant. Said agreement provided the plaintiff with a guaranteed parking space in defendant’s garage in return for a monthly fee. Defendant’s facility was a four-story fully enclosed parking garage. Although the garage was run under a park and lock arrangement (i.e., plaintiff parked and locked the car herself), defendant did provide a security guard for the premises.
On the morning of February 1, 1990, at approximately 9:00 a.m., the plaintiff parked her 1983 Nissan Pulsar, in the defendant’s garage. Upon returning to retrieve her car at 6:00 p.m. that same evening, plaintiff discovered that the car had been severely vandalized, at some point during the day. Specifically, the perpetrators had stolen plaintiff’s radio, damaged the trunk in an attempt to break into same and also did extensive damage to the exterior of the car. Plaintiff submitted into evidence two estimates for repair of the car in the respective sums of $1,364 and $1,446.
LAW
The defendant disavows any responsibility for the vandalism to plaintiff’s car, relying on the fact that the garage was a park and lock facility with no surrender of the parker’s keys to the garage attendant. Under such circumstances, defendant maintains that no bailment relationship has been created between the parties and thus there is no presumption of negligence upon the defendant. Defendant further maintains that plaintiff must prove negligence against the defendant in order to recover and that she has not met said burden herein. The defendant cites two cases as authority for its position, Peralta v Port of N. Y. Auth. (76 Misc 2d 1086) and Ellish v Airport Parking Co. (42 AD2d 174). In both of these cases the Appellate Division found that in the absence of the creation of a bailment the presumption of either ordinary or gross negligence which rises from said creation is not to be applied. In *219 other words, without bailment, the burden of proof does not shift and the plaintiff has the burden of proving negligence against the defendant in order to recover.
There is no dispute that in this case the facility in question was a park and lock. Defendant concludes, therefore, that no bailment can be created since there is no surrender of dominion or control by the owner to the alleged bailor (e.g., a surrender of keys). However, the creation of a bailment is not conclusively decided merely by whether or not a garage customer surrenders the car keys to an attendant. "The nature of the circumstances themselves leads to the determination whether the transaction should be considered a bailment, in which event the defendant is liable to the plaintiff, or whether the transaction should be considered a license to occupy space, in which event the defendant is not liable to the plaintiff.” (Ellish v Airport Parking Co., supra, at 176-177.)
While it is conceded herein that plaintiff did not surrender her keys to a garage attendant, there are other circumstances present here that do create an implied bailment. First, the court notes that unlike the parking facilities in the cases cited by the defendant, the garage herein was not an open-air arrangement but a fully enclosed permanent structure. Moreover, egress from the garage was controlled by an attendant at the main gate. While a "park and lock” arrangement allows a garage operator to significantly cut its operating costs, such a setup does not abolish all dominion of control by the garage operator. Although patrons of the garage may park their cars by themselves, clearly they cannot simply retrieve their car and drive away without either presentation of a ticket and payment or, as in plaintiff’s case, the showing of an authorized sticker to the attendant at the main gate. These are procedures which must be followed if a patron wants to drive out of the garage. If payment is not tendered or there is no authorized arrangement to park, the garage operator will not release the vehicle. These mandatory procedures and the right of refusal evidence defendant’s custody and control of the vehicle (Continental Ins. Co. v Meyers Bros. Operations, 56 Misc 2d 435). As noted by Justice Shapiro in his dissenting opinion in Ellish, "the shift to lessened personal contact between the lot operator’s employees and his patrons in no way changes the basic nature of the relationship between the lot operator and his patrons so long as he retains dominion over the cars parked in his lot and can withhold their return until he is paid the full fee due for the parking. It would be *220 ironic if the operator’s use of additional cost-saving devices were read as lessening his responsibility to use due care in protecting cars parked with him from damage to theft.” (Ellish v Airport Parking Co., supra, at 182 [emphasis added].)
Secondly, and most importantly, defendant herein conceded that it provided a security guard for the garage premises. The employment of such a person and his presence on the premises is further evidence of the operator’s dominion and control over the cars parked within the garage. Moreover, it is inconceivable to this court how a security guard on regular patrol failed to become aware of the vandalism to plaintiffs car since the extent of damages done indicated that the perpetrators spent a considerable amount of time in attempting to break into the car and also they must have caused considerable noise in the attempt. Despite this defendant maintains that it had no knowledge of the attempted break-in and did not even become aware of the same until plaintiff came to retrieve the car at 6:00 p.m. that evening.
Based upon the above-noted facts and circumstances this court is of the opinion that the transaction herein was an implied bailment between plaintiff and defendant. As such, plaintiff may rely upon a presumption of negligence against defendant in determining the liability for the damage to her car. Said presumption shifts the burden of proof to the defendant to show that defendant was not negligent. Defendant has failed to meet that burden herein. Accordingly, the court finds in favor of the plaintiff.
Therefore, judgment for the plaintiff in the sum of $1,364, without costs, interest or disbursements.